Laura Gianni, SBN 178130
Marcus Petoyan, SBN 109817
GIANNI ✦ PETOYAN
17383 Sunset Blvd., Suite A200
Pacific Palisades, CA  90272
Telephone No: (310) 230-6767
Fax No: (310) 230-6051
Email:  lag@giannipetoyan.com

Attorneys for Plaintiffs, **KIMBERLY AND LINDSEY NEIGHBORS**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY NEIGHBORS, an individual; LINDSEY NEIGHBORS, an individual and husband of KIMBERLY NEIGHBORS, | CIVIL CASE NO: |
| | **COMPLAINT FOR DAMAGES DEMAND FOR JURY TRIAL** |
| Plaintiffs, | **Causes of Action:** |
| vs. | **1. Products Liability** |
| | **2. Negligence** |
| | **3. Breach of Express Warranty** |
| | **4. Breach of Implied Warranty** |
| | **5. Deceit by Concealment** |
| PFIZER, INC.; WYETH, INC.; WYETH PHARMACEUTICALS, INC. ;WYETH HOLDINGS CORP.; MCKESSON CORPORATION | **6. Negligent Misrepresentation and Concealment** |
| | **7. Fraud** |
| Defendants. | |

## INTRODUCTION

1.     This case involves the prescription diet drug combination popularly known as "fen-phen", which consisted of Pondimin/fenfluramine, which was manufactured, marketed, sold, and distributed by Defendants, and phentermine. "Fen-phen" was not approved by the United States Food

1   and Drug Administration for weight loss or any other indication. Defendants, and each of them,

2   however, were aware or should have been aware of serious medical dangers associated with the use

3   of "fen-phen" including the known side effect of Pondimin/fenfluramine (and the related drug

4   Redux/dexfenfluramine), primary pulmonary hypertension (also known as pulmonary arterial

5   hypertension), and not only failed to adequately alert doctors and patients, including Plaintiff

6   Kimberly Neighbors and her doctor, of such known risks, but actively concealed such known risks

7   from Plaintiff, her prescribing physicians, the general public and the FDA, while all the while

8   recommending, promoting, advertising and profiting from the widespread prescriptions of "fen-

9   phen".

**GENERAL ALLEGATIONS**

11      2.     This action is an action for monetary damages brought by Plaintiffs. Plaintiff

12   Kimberly Neighbors was prescribed and supplied with, received, ingested and consumed the

13   prescription drug Pondimin ("fenfluramine") as endorsed, designed, formulated, compounded,

14   manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted,

15   packaged, advertised for sale, prescribed, and sold by Defendants, and phentermine, in combination,

16   as "fen-phen". This action seeks, among other relief, general and special damages.

17      3.     PFIZER, INC., WYETH, INC., WYETH PHARMACEUTICALS, INC. WYETH

18   HOLDINGS CORP., MCKESSON CORPORATION are hereinafter identified as "Defendants" and

19   were the agent, servant, partner, aider and abettor, co-conspirator and joint venturer of each of the

20   remaining Defendants herein and were at all times operating and acting within the purpose and scope

21   of said agency, service, employment, partnership, conspiracy and joint venture and rendered

22   substantial assistance and encouragement to the other Defendants, knowing that their conduct

23   constituted a breach of duty owed to Plaintiffs.

24      4.     There exists, and at all times herein mentioned, there existed, a unity of interest in

25   ownership between certain Defendants and other certain Defendants such that any individuality and

26   separateness between the certain Defendants has ceased and these Defendants are the alter-ego of the

27   other certain Defendants and exerted control over those Defendants. Adherence to the fiction of the

28   separate existence of these certain Defendants as an entity distinct from other certain Defendants will

1   permit an abuse of the corporate privilege and would sanction fraud and would promote injustice.

2        5.     Plaintiffs' damages were caused by the wrongful acts, omissions, and/or fraudulent

3   misrepresentations of Defendants.

4        6.     At all times herein mentioned, Defendants, and each of them were engaged in the

5   business of, or were successors in interest to, entities engaged in the business of research, licensing,

6   designing, formulating, compounding, testing, manufacturing, producing, processing, assembling,

7   inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising for sale or

8   selling the prescription drugs known as Pondimin (as part of "fen-phen") for the use and ingestion by

9   Plaintiff Kimberly Neighbors and the general public.

10       7.     At all times herein mentioned, Defendants, and each of them, were corporations

11  authorized to do business in Texas and California.

12       8.     At all times herein mentioned, the officers and directors of Defendants named herein

13  participated in, authorized and directed the production and promotion of the aforementioned product

14  when they knew, or with the exercise of reasonable care should have known, of the hazards and

15  dangerous propensities of said product and thereby actively participated in the tortious conduct which

16  resulted in the injuries of Plaintiffs herein.

17       9.     Plaintiffs file this lawsuit within the applicable limitations period of first suspecting

18  that said drugs were the cause of any appreciable harm sustained by Plaintiffs. Additionally, the

19  statute of limitations was tolled pursuant to the provisions of the Nationwide Class Action Settlement

20  with American Home Products approved by the United States District Court for the Eastern District

21  of Pennsylvania.  Plaintiffs could not, by the exercise of reasonable diligence, have discovered the

22  wrongful cause of their injuries earlier.  Plaintiffs did not suspect, nor did Plaintiffs have reason to

23  suspect, that Plaintiffs had been injured, the cause of the injuries, or the tortious nature of the conduct

24  causing the injuries, until less than the applicable limitations period prior to the filing of this action.

25  Additionally, Plaintiffs were prevented from discovering this information sooner because Defendants

26  herein misrepresented and continue to misrepresent to the public and to the medical profession that

27  the drugs were safe and free from serious side effects, and Defendants have fraudulently concealed

28  facts and information that could have led Plaintiffs to discover a potential cause of action.

**PARTIES**

**Plaintiffs**

10.     Plaintiff Kimberly Neighbors is a resident and citizen of Texas, residing in Odessa, Ector County, located in the Western District of Texas.  Plaintiff Kimberly Neighbors was prescribed and supplied with, received, and took, ingested and consumed the unapproved prescription drug combination "fen-phen" (Pondimin and phentermine) within the state of Texas and was diagnosed with pulmonary arterial hypertension "PAH"  (a/k/a primary pulmonary hypertension "PPH") as a result.  Kimberly Neighbors was prescribed and did ingest "fen-phen" for longer than three months during 1995.  At all times relevant to this lawsuit, including when the time period when she was prescribed and ingested "fen-phen", Plaintiff Kimberly Neighbors was a resident of the State of Texas.

11.     Plaintiff Lindsey Neighbors is the husband of Plaintiff Kimberly Neighbors and has suffered, and will continue to suffer, damages as a result of the physical injuries to his wife Kimberly Neighbors that were in turn caused by her ingestion of "fen-phen".

12.     Plaintiff Kimberly Neighbor has recently been diagnosed as suffering from primary pulmonary hypertension ("PPH")[1] as a result of her ingestion, consumption and use of "fen-phen".

**Defendants**

13.     Prior to March 11, 2002, American Home Products Corporation ("AHPC") was a Delaware corporation with its principal place of business at Five Giralda Farms, Madison, New Jersey 07947.  On August 3, 1998, A.H. Robins Company, Inc., ("Robins") was merged into AHPC and ceased to exist as a separate entity.  On March 11, 2002, AHPC changed its name to Wyeth, a/k/a Wyeth, Inc.  Defendant Wyeth, Inc. is a Delaware corporation with a principal place of business at 5 Giralda Farms, Madison, New Jersey 07940.

14.     Prior to September 15, 1997, AHPC distributed and sold Pondimin and distributed,

[1] The current medical term for "PPH" is Pulmonary Arterial Hypertension, or "PAH", and PAH associated with exposure to diet drugs is termed PAH secondary to anorexigen exposure.  For purposes of this Complaint, the term primary pulmonary hypertension or "PPH" is defined as it is in the Nationwide Class Action Settlement with American Home Products approved by the United States District Court for the Eastern District of Pennsylvania and is interchangeable with PAH for purposes of this lawsuit.

promoted, and sold Redux to licensed health care providers in the United States, including California and Texas.  At all times relevant hereto, all Defendants were in the business of promoting, marketing, distributing, manufacturing and/or selling the pharmaceutical drugs fenfluramine and/or dexfenfluramine.  At all times relevant to this action, the Defendants developed, manufactured, promoted, marketed, distributed and/or sold the aforementioned drugs through interstate commerce and in California and Texas, and otherwise regularly conducted business in California and Texas.

15.     In October 2009, Defendant Pfizer, Inc. (hereinafter "Pfizer") acquired Defendants Wyeth, Inc., Wyeth Pharmaceuticals, Inc., and Defendant Wyeth Holdings Corporation and thereby acquired their liabilities.  In all material respects, Pfizer is the successor in interest to the Wyeth entities identified above.  Defendant Pfizer, Inc. is a Delaware corporation with a principal place of business in New York, New York.  Defendant regularly conducts business in California.  Defendant Pfizer, Inc. may be served with a copy of summons and complaint through its registered agent for service of process, C T Corporation System, at 818 W. Seventh St., Los Angeles, CA 90017.

16.     Defendant Wyeth, Inc., is a Delaware corporation with a principal place of business at 5 Giralda Farms, Madison, New Jersey 07940.  Defendant regularly conducts business in California.

17.     Defendant Wyeth Pharmaceuticals, Inc., is a Delaware corporation with a principal place of business at 5 Giralda Farms, Madison, New Jersey 07940.  Defendant regularly conducts business in California.

18.     Defendant Wyeth Holdings Corporation is a Maine corporation with a principal place of business at 5 Giralda Farms, Madison, New Jersey 07940.

19.     Defendants Wyeth Inc., Wyeth Pharmaceuticals, Inc., Wyeth Holdings Corporation and Pfizer, Inc., and their respective d/b/a's, may be referred to collectively herein as "WYETH".

20.     Defendant McKesson Corporation ("McKesson") is a Delaware Corporation with its principal place of business at One Post Street, San Francisco, California 94104.  Defendant McKesson Corporation is authorized to do business in the state of California and is engaged in substantial commerce and business activity in San Francisco County.  Defendant McKesson may be served with a copy of summons and complaint through its registered agent for service of process, The Prentice-Hall Corporation System, Inc., at 2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA

95833.

21.     At all times relevant hereto, Defendant McKesson was engaged in the business of researching, designing, developing, licensing, compounding, testing, producing, manufacturing, assembling, processing, packaging, inspecting, labeling, supplying, distributing, selling and warranting the Pondimin which the Plaintiff used and which caused the injuries and damages alleged herein.  More specifically but without limitation, on information and belief, McKesson supplied and/or distributed the particular "fen-phen" that Plaintiff was prescribed and in fact ingested.

22.     As a participant in the chain of distribution of the "fen-phen" and Pondimin that Plaintiff ingested, McKesson is liable for the injuries and damages sustained by Plaintiff resulting from their use of the defective products.

23.     McKesson's liability is so intertwined with the liability of the other Defendants that no claims arising out of Plaintiff's use of Pondimin and/or "fen-phen"  can be severed from this action.

24.     As referred to herein, the conduct of each of the Defendants is deemed to include and encompass the conduct of any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns, and any of its officers, directors, employees, agents, representatives, and other persons acting on its behalf.

25.     Each of the Defendants is or has been, at all times relevant to the claims herein asserted against them, engaged in developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, publicizing, and/or introducing into or delivering in interstate commerce, throughout the United States, and in the States of California and Texas, either directly or indirectly through third-parties, subsidiaries, or related entities, Pondimin and Redux.

26.     At all times herein alleged, each of the Defendants was an agent, servant, partner, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their conduct constituted a breach of duty owed to Plaintiffs.

27.    The Defendants in this action, including Wyeth, Pfizer and McKesson, will be referred to collectively simply as "Defendants".

### JURISDICTION AND VENUE

28.    Jurisdiction and venue are  proper in the United States District Court, Northern District of California for the following reasons:

a.    At all times relevant hereto, Defendants were in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising "fen-phen" in the State of California.

b.    Defendant McKesson Corporation has its principle office and/or place of business in the County of San Francisco, in the State of California;

29.    This is an action for damages arising out of personal injuries which exceeds $25,000.00, the minimum jurisdictional requirement.   There is complete diversity of citizenship among the parties.

### FACTUAL ALLEGATIONS

30.    Pondimin (fenfluramine) was widely sold, distributed, promoted and advertised by the named Defendants in combination with phentermine as "fen-phen".  Defendants, and each of them, sold and distributed the subject drugs in California and Texas as well as other states and placed said drugs into the stream of commerce knowing that they would enter the State of Texas in which Plaintiffs resided and knowing that said drugs would be consumed therein.

31.    Fenfluramine was one of the drugs prescribed in combination and promoted and referred to as "fen-phen ".   Prescriptions of "fen-phen" caused a dramatic increase in the sales of fenfluramine which had been available for prescription use but was not widely used until the combination drug "fen-phen" became popular.

32.    Defendants, directly or indirectly, made, created, manufactured, assembled, designed, sterilized, tested, evaluated, labeled, supplied, packaged, marketed, advertised, warranted, distributed and/or sold the drugs fenfluramine (Pondimin) as part of the popular prescription "fen-phen" and the related drug, dexfenfluramine (Redux).  Defendants assisted in, and had control over, the design,

- 7 -

assembly, packaging, labeling, marketing, advertising, manufacturing distribution and sale of the drugs fenfluramine (Pondimin) and dexfenfluramine (Redux).

33.     At all times material hereto, the Defendants either knew or should have known that the drugs fenfluramine (Pondimin) in "fen-phen" and the related drug, dexfenfluramine (Redux), had been related to and associated with severe, life threatening complications, including but not limited to PPH a/k/a PAH.

34.     In 1965, the diet drug Aminorex was introduced in Europe.  Aminorex was touted as a wonder weight loss drug that worked by increasing brain serotonin and inhibiting reuptake of serotonin.  However, by 1967 evidence began to surface that the ingestion of Aminorex was associated with pulmonary hypertension.  Over the next six years, an Aminorex epidemic raged in Europe.  There was a ten-fold increase in primary pulmonary hypertension cases.  Half of the patients died within ten years and the rest of the patients suffered significant oxygen deprivation and were debilitated for the remainder of their lives.  Aminorex was removed from the European market in 1968.

35.     By 1972, Defendants knew, or should have known, of the European experience with Aminorex.

36.     In 1973, Pondimin was approved by the FDA for short term, monotherapy use.  Pondimin is in the same family of drugs as Aminorex and is very similar to Aminorex.

37.     Pondimin sales languished, because the use of the drug made users lethargic and tired, and did not result in significant weight loss.

38.     The "phen" portion of "fen-phen" consists of phentermine, an amphetamine which helps the body burn calories faster and which serves to counteract the drowsiness caused by the "fen" portion of the dosage consisting of fenfluramine, a drug which affected the serotonin levels in the brain.  Despite the fact that the concomitant  prescription use of fenfluramine and phentermine as "fen-phen" was never approved by the FDA, the subject drugs were widely prescribed for use in combination with each other for weight loss, largely due to a study supported by Defendants, the Weintraub study, where the Pondimin was provided by Defendants free of charge to the study sponsor.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

39.     Dexfenfluramine is the *d*-isomer of fenfluramine, containing essentially the same active ingredient as fenfluramine.  Defendants marketed dexfenfluramine under the trade name Redux.  Redux was approved by the FDA in 1996 and had a similar side effect profile to Pondimin.

40.     Defendants knew of the serious side effects of fenfluramine and/or dexfenfluramine including the increased risk for PPH for a substantial period of time before Plaintiff Kimberly Neighbors ingested "fen-phen", and the true side effect and safety profile was not provided to the FDA.   Instead, Defendants aggressively marketed the drugs and promoted their use, in particular with respect to promoting their widespread prescription as evidenced by the skyrocketing use of "fen-phen", while downplaying evidence of the serious and potentially fatal side effects that consumers of these drugs could face.

41.     Defendants undertook a willful, wanton and reckless course of action and marketing strategy which included advertising and promotional campaigns to aggressively promote and sell the subject drugs by falsely misleading potential users about the products, by suppressing material facts from the public, including Plaintiffs, and the FDA, and by failing to warn users about the serious health effects which Defendants knew or should have known could result from the use of the subject drugs.

42.     This advertising campaign on the whole, through its affirmative misrepresentations and omissions, falsely and fraudulently sought to create the impression and to convey to Plaintiffs, and others on whom Plaintiffs relied, that the use of "fen-phen" was safe and effective for weight loss, while concealing the true facts known to them about the known and knowable risk of PPH a/k/a PAH.

43.     Defendants as manufacturers and distributors, knew of and recklessly encouraged the prevalence of prescriptions for "fen-phen" and failed to warn physicians and consumers that the combination drug regimen was not FDA approved.

44.     Defendants, and each of them, by affirmative misrepresentations and omissions, falsely and fraudulently represented that the use of "fen-phen", was safe and effective for weight loss.

45.     In particular, Defendants' marketing efforts as well as its product inserts and labeling, falsely, fraudulently and negligently misrepresented a number of facts regarding fenfluramine and/or

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

dexfenfluramine, including the following: The presence of adequate testing of fenfluramine and the presence of adequate testing of any combination use of the product with phentermine; fenfluramine and/or dexfenfluramine's efficacy including but not limited to the severity, frequency and discomfort of side effects and adverse health effects caused by the drugs; and the relative risks associated with the drugs including the prevalence of pulmonary hypertension and primary pulmonary hypertension.

46.    On October 3, 1981, Dr. J.G. Douglas published "Pulmonary Hypertension and Fenfluramine" in the British Medical Journal.  On January 25, 1986, an article entitled "Irreversible Pulmonary Hypertension after Treatment with Fenfluramine" was published in the British Medical Journal.  Defendants knew, or should have known, of the British Medical Journal articles and how those articles related to their drugs Pondimin and Redux a decade later.

47.    In 1984, Dr. Michael Weintraub published A Double-Blind Clinical Trial in Weight Control: Use of Fenfluramine and Phentermine Alone and in Combination in the Archives of Internal Medicine.  Dr. Weintraub's study was supported by A.H. Robins (which was later acquired by Wyeth).  Despite noting some adverse effects associated with fenfluramine, Dr. Weintraub entirely failed to examine the long-term safety of fenfluramine.  Instead, the study focused on the short-term effectiveness of the drugs used individually, and in combination.

48.    In 1992, Dr. Weintraub published a series of articles in Clinical Pharmacological Therapies, in which he reported his research regarding the long term use of fenfluramine and phentermine for weight control. Dr. Weintraub's research was supported by Wyeth.

49.    Dr. Weintraub's research assumed the safety of fenfluramine and did not examine the short-term or long-term safety of the drug. Further, Wyeth failed to conduct or fund any studies or research regarding the long-term safety of the fenfluramine drug, Pondimin.  Nevertheless, Defendants promoted to physicians and the public Dr. Weintraub's conclusion that long term combination use of fenfluramine and phentermine was effective for the management of obesity.

50.    By 1993, Defendants' labeling for Pondimin indicated that there were only four (4) reported cases of pulmonary hypertension reported in association with the drug. Yet, that same year, Dr. Francois Brenot published "Primary Pulmonary Hypertension and Fenfluramine Use" in the British Heart Journal.  Dr. Brenot identified 25 cases of primary pulmonary hypertension associated

with the use of fenfluramine.  Defendants knew or should have known of the Brenot article.
Defendants should have known by at least 1993 that Pondimin was defective and unreasonably
dangerous.  Defendants should have known by at least 1993 that the labeling of Pondimin was false.

51.     On June 24, 1994, Wyeth Safety Surveillance Monitor, Amy Myers, wrote a memo to
AHP Medical Monitor, Fred Wilson, and indicated that Wyeth's database contained thirty-seven (37)
cases of primary pulmonary hypertension associated with Pondimin.  Further, in February 1994, the
preliminary results of the International Primary Pulmonary Hypertension study ("IPPH Study")
entitled "Appetite Suppressants and the Risk of Primary Pulmonary Hypertension" was released and
available to Defendants.  The preliminary results of the IPPH Study confirmed the association
between fenfluramine and dexfenfluramine, and pulmonary hypertension and primary pulmonary
hypertension.  Defendants concealed the number of cases of primary pulmonary hypertension
associated with Pondimin that Defendants knew existed in order to continue to market Pondimin for
profit.

52.     In addition to the all of the other conduct herein alleged, in 1994, prior to the time
Plaintiff Kimberly Neighbors was prescribed and ingested "fen-phen", senior level employees at
American Home Products, including members of the Regulatory Affairs Department, proposed and
considered label changes internally that could be effected and submitted to the FDA as a "...special
Supplement:  Change Being Effected" consistent with 21 CFR 314.70 (c)(2) to update the labelling
information for Pondimin.  The proposed text was not sent to the FDA, no labelling changes were
implemented, and information about the known increased risk of PPH as recognized by Defendants
was concealed from the FDA, physicians and the general public.

53.     The August 26, 1996 issue of the New England Journal of Medicine reported the final
results of IPPH Study, which had been preliminarily released in February 1994.  The IPPH Study
concluded that fenfluramine-based anorexigens, such as fenfluramine and dexfenfluramine, increased
the risk of PPH by a multiple of more than 23 times.

54.     Even prior to their knowledge of the IPPH Study, the Defendants, including but not
limited to McKesson, knew about the risks of PPH associated with using the subject drugs from
experience with and subsequent banning of such drugs in various countries in Europe.  Nevertheless,

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Defendants failed to apprise Plaintiffs, the public at large, or physicians of these material facts and risks.

55.     Defendants continued to promote Pondimin after learning of the extreme danger associated with it.  Defendants continued to promote Pondimin knowing the drug had no beneficial use.  The Pondimin labeling was totally inadequate to alert prescribing physicians and patients of the actual risks of PH and/or PPH.  Defendants knew of that danger and that risk.

56.     Even after it knew of the danger, Defendants did not withdraw Pondimin from the market and did not do any further testing of the drug.  Instead, Defendants continued to market the drug as sales of "fen-phen" skyrocketed.

57.     Further, in 1996, Wyeth introduced their dexfenfluramine drug, Redux, into the U.S. market despite the fact that Wyeth knew of the danger and risks of primary pulmonary hypertension associated with Pondimin.

58.     At all times relevant to this case, Defendants also knew or should have known of many other studies, regulatory actions and concerns, incidences of injury and/or death, concerns about the subject drugs' safety among scientists, researchers, regulators and other knowledgeable professionals, the dangers of drug combinations, meetings among pharmaceutical industry officers, executives or employees (including Wyeth), internal memos and reports of health concerns regarding the subject drugs, the desire of Wyeth to stop or delay regulatory action regarding the subject drugs, the lack of sufficient safety studies before and during marketing of the subject drugs, the contents of Defendants' own files, plans and reports, the danger of the off-label use of medications, the desire of Defendants to maximize profits despite safety concerns, safety concerns about the drugs which could block or change FDA approval, regulatory actions, reports of injury and concerns about the subject drugs in Europe, case reports of pulmonary hypertension, regulatory efforts to make changes in the warning and labels required on these products and the plans and actions of Wyeth  to fight such changes (including supplying regulators with false or misleading information), warning labels on the products designed so that they would be overlooked by physicians and users such as Plaintiffs, statements by medical professionals regarding safety concerns for the subject drugs, the fact that phentermine is an MAOI drug which would be contra-indicated for usage with fenfluramine and

dexfenfluramine, prevalent usage of unsafe combinations of the subject drugs (as promoted by Defendants) and adverse effects reported there from, the failure of Wyeth to report incidences of PPH resulting from the use of the subject drugs to regulators and health care professionals, false information provided by sales representatives and others concerned with advertising and promoting the subject drugs, efforts to derail regulatory review and oversight of the subject drugs, the identification of groups most at risk of injury, the misrepresentation and concealment of reports regarding adverse health effect of the subject drugs by Wyeth from regulators and health care professionals, and many other material facts regarding the subject drugs and which would have shown the danger and adverse health effect of using the subject drugs. Nevertheless, Defendants suppressed, misrepresented and failed to inform Plaintiffs, the public at large, and physicians of these material facts and risks, and did encourage and promote unsafe usage of Pondimin and/or Redux and "fen-phen" by Plaintiffs and others.

59.    Defendants having undertaken the manufacture, sale, marketing, distribution and promotion of the diet drugs described herein owed a duty to provide Plaintiffs, physicians and others with accurate and complete safety information regarding the subject drug products. Nevertheless, Defendants misrepresented and concealed these facts, and failed to inform and did conceal from Plaintiffs, the public at large, the FDA and physicians of the material facts and risks of using the subject drugs.

60.    The drugs fenfluramine and dexfenfluramine were defective and unreasonably dangerous when they left the possession of Defendants in that, among other ways:

    a.    the subject drugs caused injury to the user far beyond any warned, noticed, expected or reasonable side effect or adverse reaction and when placed in the stream of commerce they contained unreasonably dangerous defects subjecting Plaintiffs to risks from expected or known usage, including bodily injury and death, which exceeded the benefits of the subject drugs;

    b.    when placed in the stream of commerce the subject drugs were defective in design and formulation, making use of the drugs more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with obesity

1    and weight loss;

2         c.    the subject drugs contained insufficient and/or ineffective warnings to alert

3    consumers and users to the risks of injury and death by PPH:

4              i.    the subject drugs were insufficiently tested (singularly or in

5                    combination);

6              ii.   there were insufficient instructions on the proper use of the subject

7                    drugs;

8              iii.  there was misleading advertising and promotion concerning the safety

9                    and benefits of using the subject drugs

10             iv.   there were inadequate post-marketing warnings or instructions because,

11                   after Defendants knew or should have known of the significant risks

12                   previously described, Defendants failed to provide adequate warnings

13                   to users and consumers, and/or their physicians, and continued to

14                   promote the sale and use of the subject drugs; and

15             v.    the subject drugs had not been materially altered or modified prior to

16                   the use of said drugs by Plaintiff;

17        d.    Defendants, and each of them, were in the business of distributing and selling

18    the products made the basis of this lawsuit. Defendants sold and/or distributed these

19    products in a defective condition that was unreasonably dangerous to the user or

20    ultimate consumer of this product. Each product was expected to and did reach the

21    user and consumer Plaintiff without substantial change in the condition at which it was

22    sold.

23        61.    As a direct and proximate legal result of the defective condition of the "fen-phen"

24    ingested by Plaintiff Kimberly Neighbors, Plaintiff sustained: serious and permanent injuries,

25    physical pain and suffering, impairment, disability, disfigurement, mental anguish, loss of capacity

26    for the enjoyment of life, time in life that could have been spent doing things other than going to

27    doctors, physically suffering, and undergoing medical monitoring; loss of earnings and earning

28    capacity; expense of hospitalization, medical and nursing care and treatment and medical monitoring;

and fear and mental anguish concerning future medical problems associated with her injuries. As a further direct and proximate legal result of the defective condition of the "fen-phen", as well as the conduct of the Defendants, Plaintiff Lindsey Neighbors has suffered loss of consortium and services of his spouse.

62.     Defendants knowingly, intentionally and negligently disseminated misleading information to physicians throughout California through the labeling information for Pondimin and Redux (including but not limited to the package insert label and the PDR) which misled the medical community, the FDA, physicians and specifically Plaintiffs' physicians about the risks of Pondimin and Redux.

63.     As a direct and proximately result of Defendants' defective products and breach of their duties, Plaintiffs have been harmed as alleged herein, and more specifically, Plaintiff Kimberly Neighbors was diagnosed with PAH resulting from her ingestion of "fen-phen".

### FIRST CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY

#### (Against All Defendants)

#### I.  FAILURE TO WARN

64.     Plaintiffs hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

65.     Pondimin (and the related drug Redux) were defective and unreasonably dangerous when they left the possession of the respective Defendants in that they contained warnings insufficient to alert consumers, including Plaintiffs herein and their physicians, of the dangerous risks and reactions associated with administration of Pondimin and Redux including but not limited to its propensity to cause the development of PH and PPH and other serious side effects, including valvular heart disease, and the risk of death.   Pondimin, Redux and "fen-phen" were unaccompanied by warnings about the actually known and reasonably scientifically knowable risk of developing PPH a/k/a PAH at all times, and most specifically during the time period 1995 when Plaintiff Kimberly Neighbors was prescribed and ingested "fen-phen".

66.     Plaintiff could not have discovered any defects, including the true information about

the true risk of developing the known side effect PPH a/k/a PAH through the exercise of reasonable care.

67.     The Defendants, as manufacturers and/or distributors of Pondimin, Redux, and "fen-phen" are held to the level of knowledge of an expert in the field.

68.     The warnings that were given by the Defendants were inaccurate and false.

69.     The warnings that were given by the Defendants failed to properly warn consumers and physicians of the risk of development of PPH and PAH (and other cardiac and pulmonary disorders, including valvular heart disease) as well as the risk of death from the use of "fen-phen", Pondimin and Redux.

70.     Ordinary consumers would not have recognized the potential risks of development of PH and PPH and other cardiac and pulmonary disorders, including valvular heart disease, as well as risk of death from the use of "fen-phen", Pondimin and Redux.

71.     Plaintiff, individually and through Plaintiff's prescribing/treating physicians, reasonably relied on the skill, superior knowledge, and judgment of the Defendants.

72.     The Defendants had a continuing duty to warn the Plaintiff and Plaintiff's prescribing/treating physicians of the dangers associated with the prescription drugs "fen-phen", Pondimin and Redux.

73.     Had Plaintiff or Plaintiff's physicians received adequate warnings regarding the risks of "fen-phen", Pondimin and Redux, Plaintiff would not have used them.

74.     As a direct and proximate result of the defective and inappropriate warnings and the unreasonably dangerous and defective characteristics of "fen-phen", Pondimin and Redux, and the Defendants' failure to comply with federal standards and requirements, Plaintiff suffered severe and permanent injuries.  Plaintiff incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise economically injured.

75.     As a direct, legal, proximate and producing result of the Defendants conduct as described above, Plaintiff suffered severe and permanent injuries.  Plaintiffs endured substantial conscious pain and suffering, both physical and emotional in nature.  Plaintiff incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise

physical, emotionally, and economically injured. Plaintiffs seek actual and punitive damages from the Defendants as alleged herein.  As a further direct and proximate legal result of the defective condition of the drugs Pondimin and Redux, as well as the conduct of the Defendants, Plaintiff Lindsey Neighbors has suffered loss of consortium and services of his spouse.  The injuries and damages alleged herein are permanent and will continue into the future.

76.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## II.    MANUFACTURING DEFECT

77.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

78.    That the Defendants manufactured, distributed and sold the Pondimin consumed by Plaintiff.

79.    That Pondimin was defective and unreasonably dangerous when they left the possession of Defendants.

80.    That the defects inherent and contained in Pondimin and thus "fen-phen" were a substantial and proximate cause of the injuries sustained by Plaintiffs.

81.    As a direct, legal, proximate and producing result of the Defendants conduct as described above, Plaintiff suffered severe and permanent injuries.  Plaintiff endured substantial conscious pain and suffering, both physical and emotional in nature.  Plaintiff incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise physical, emotionally, and economically injured. Plaintiffs seek actual and punitive damages from the Defendants as alleged herein.  As a further direct and proximate legal result of the defective condition of the drugs Pondimin and thus "fen-phen", as well as the conduct of the Defendants, Plaintiff Lindsey Neighbors has suffered loss of consortium and services of his spouse.  The injuries and damages alleged herein are permanent and will continue into the future.

82.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other

1  relief as the Court deems proper.

2  ### III.    DESIGN DEFECT

3  83.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every

4  allegation set forth in the preceding paragraphs and further alleges as follows:

5  84.    That the Defendants manufactured, distributed and sold the Pondimin and "fen-phen"

6  consumed by Plaintiff.

7  85.    That Pondimin and "fen-phen" were defective and unreasonably dangerous when they

8  left the possession of Defendants.

9  86.    That the defects inherent and contained in Pondimin and "fen-phen" were a substantial

10  and proximate cause of the injuries sustained by Plaintiffs.

11  87.    That the design and formulation of Pondimin and "fen-phen" made it likely that harm

12  to Plaintiff would occur.

13  88.    That the risks inherent in the design and formulation of Pondimin and thus "fen-phen"

14  outweigh any therapeutic benefit they may have provided.

15  89.    That the active ingredient in Fenfluramine and Dexfenfluramine was too unsafe to be

16  prescribed to any class of patients for any purpose.

17  90.    As a direct, legal, proximate and producing result of the Defendants' conduct as

18  described above, Plaintiff suffered severe and permanent injuries.  Plaintiff endured substantial

19  conscious pain and suffering, both physical and emotional in nature.  Plaintiff incurred significant

20  expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise

21  physical, emotionally, and economically injured. Plaintiff seek actual and punitive damages from the

22  Defendants as alleged herein.  As a further direct and proximate legal result of the defective condition

23  of the drugs Pondimin and thus "fen-phen", as well as the conduct of the Defendants, Plaintiff

24  Lindsey Neighbors has suffered loss of consortium and services of his spouse.  The injuries and

25  damages alleged herein are permanent and will continue into the future.

26  91.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory,

27  treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other

28  relief as the Court deems proper.

## SECOND CAUSE OF ACTION

### NEGLIGENCE

### (Against All Defendants)

92.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

93.    At all times material hereto, the Defendants, and each of them individually, had a duty to exercise reasonable care to consumers, including Plaintiff herein and her physicians, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling, and/or sale of "fen-phen", Pondimin and Redux.

94.    The Defendants, and each of them individually, breached their duty of reasonable care to Plaintiffs in that they negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled, and/or sold "fen-phen" and/or Pondimin and/or Redux.

95.    Plaintiff's injuries and damages alleged herein were and are the direct and proximate result of the carelessness and negligence of the Defendants as follows:

a.    In their design, development, research, manufacture, testing, packaging, promotion, marketing, sale, and/or distribution of the prescription drugs "fen-phen", Pondimin and/or Redux;

b.    In their failure to warn or instruct and/or adequately warn or adequately instruct, users of "fen-phen", Pondimin and/or Redux, including Plaintiffs herein, of the dangerous and defective characteristics of "fen-phen", Pondimin and/or Redux;

c.    In their design, development, implementation, administration, supervision, and/or monitoring of clinical trials for the prescription drugs "fen-phen", Pondimin and/or Redux;

d.    In their promotion of the prescription drugs "fen-phen", Pondimin and/or Redux in an overly aggressive, deceitful, and fraudulent manner, despite evidence as to the products' defective and dangerous characteristics due to their propensity to cause serious injury and/or death;

e.    In representing that the prescription drugs "fen-phen", Pondimin and/or Redux

- 19 -

were safe for their intended use when, in fact, the products were unsafe for their

intended use;

f.      In failing to perform appropriate pre-market testing of the prescription drugs

"fen-phen", Pondimin and/or Redux;

g.      In failing to perform appropriate post-market testing of "fen-phen", Pondimin

and/or Redux; and

h.      In failing to perform appropriate post-market surveillance of "fen-phen",

Pondimin and/or Redux.

i.      Given what Defendants manufacturing and distributing Defendants knew about

the dangers of Fenfluramine and thus "fen-phen" at the time of ingestion by Plaintiff

Kimberly Neighbors, it is negligent of such Defendants to continue to sell the

products.

96.     The Defendants knew or should have known that consumers such as Plaintiff herein would foreseeably suffer injury as a result of the Defendants' failure to exercise reasonable and ordinary care.

97.     As a direct and proximate result of the defective and inappropriate warnings, the unreasonably dangerous and defective characteristics of Pondimin and/or Redux, the Defendants' failure to comply with federal laws, standards and requirements, regarding the labeling of prescription drug products, and the Defendants' other negligent conduct, Plaintiffs suffered severe and permanent injuries.  Plaintiff incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise economically injured.

98.     As a direct, legal, proximate and producing result of the negligence of Defendants, Plaintiffs suffered severe and permanent injuries.  Plaintiff endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiff incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise physical, emotionally, and economically injured.  Plaintiffs seek actual and punitive damages from the Defendants as alleged herein.  As a further direct and proximate legal result of the defective condition of the drugs Pondimin and thus "fen-phen", as well as the conduct of the Defendants, Plaintiff Lindsey Neighbors

- 20 -

has suffered loss of consortium and services of his spouse. The injuries and damages alleged herein are permanent and will continue into the future.

99.     WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

### THIRD CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

### (Against All Defendants)

100.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

101.     Defendants expressly warranted that the prescription drugs Pondimin and "fen-phen" were safe and fit for use by consumers and users, including Plaintiff and Plaintiff's physicians, for their intended use, that they were of merchantable quality, that they did not produce any dangerous side effects, and that they were adequately tested and fit for their intended use.

102.     At the time of the making of the express warranties, the Defendants knew or should have known of the purpose for which "fen-phen" Pondimin and Redux were to be used and warranted the same to be, in all respects, fit, safe, effective, and proper for such purpose.

103.     At the time of the making of the express warranties, Defendants knew or should have known that, in fact, said representations and warranties were false, misleading, and untrue in that Pondimin and "fen-phen" were not safe and fit for their intended use and, in fact, produced serious injuries to consumers administered the drugs, including the development of primary arterial hypertension and death.

104.     Members of the medical community including, but not limited to, Plaintiff's healthcare providers, reasonably relied upon the skill and judgment of Defendants, and upon said express warranties in prescribing, recommending and/or administering Pondimin and thus "fen-phen".

105.     Plaintiff and Plaintiff's healthcare providers relied on the Defendants' express warranties. Plaintiff Kimberly Neighbors was prescribed and did use Pondimin and "fen-phen" for

- 21 -

1  their intended purpose.

2       106.    Defendants breached said express warranties, in that Pondimin and "fen-phen" were

3  not safe and fit for their intended use and, in fact, caused debilitating and potentially lethal side

4  effects, including PH and PPH, when administered in their recommended dose to patients.

5       107.    As a direct and proximate result of Defendants' breach of the express warranties

6  described above, the defective and inappropriate warnings and the unreasonably dangerous, the

7  defective characteristics of Pondimin and/or "fen-phen", and the Defendants' failure to comply with

8  federal standards and requirements, Plaintiff suffered severe and permanent injuries.  Plaintiff

9  incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and

10  was otherwise economically injured.

11       108.    As a direct, legal, proximate and producing result of the conduct of Defendants,

12  Plaintiff suffered severe and permanent injuries.  Plaintiff endured substantial conscious pain and

13  suffering, both physical and emotional in nature.  Plaintiff incurred significant expenses for medical

14  care and treatment, suffered lost wages and earnings, and was otherwise physical, emotionally, and

15  economically injured.  Plaintiffs seek actual and punitive damages from the Defendants as alleged

16  herein.  As a further direct and proximate legal result of the defective condition of the drugs

17  Pondimin and thus "fen-phen", as well as the conduct of the Defendants, Plaintiff Lindsey Neighbors

18  has suffered loss of consortium and services of his spouse.  The injuries and damages alleged herein

19  are permanent and will continue into the future.

20       109.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory,

21  treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other

22  relief as the Court deems proper.

23                      **<u>FOURTH CAUSE OF ACTION</u>**

24                   **BREACH OF IMPLIED WARRANTY**

25                      **(Against All Defendants)**

26       110.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every

27  allegation set forth in the preceding paragraphs and further alleges as follows:

28       111.    The Defendants designed, developed, manufactured, tested, packaged, promoted,

marketed, distributed, labeled and/or sold the prescription drugs Pondimin and "fen-phen".

112.    At the time that the Defendants designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled and/or sold Pondimin and thus "fen-phen", they knew of the use for which they were intended and impliedly warranted Pondimin and thus "fen-phen" to be of merchantable quality and safe and fit for such use.

113.    Plaintiff, individually and through Plaintiff's prescribing/treating physicians, reasonably relied upon the skill, superior knowledge, and judgment of the Defendants.

114.    Plaintiff Kimberly Neighbors was prescribed and did use Pondimin and "fen-phen" for their intended purpose.

115.    Due to the Defendants' wrongful conduct as alleged herein, Plaintiffs and their physicians could not have known about the nature of the risks and side effects associated with Pondimin and/or "fen-phen" until after Plaintiffs used one or both of them.

116.    Contrary to the Defendants' implied warranties for the prescription drugs Pondimin and/or "fen-phen", the products were not of merchantable quality and were not safe or fit for their intended use and purpose, as alleged herein.

117.    As a direct and proximate result of the Defendants' breaches of the implied warranties described above, the defective and inappropriate warnings, the unreasonably dangerous and defective characteristics of Pondimin and/or "fen-phen", and the Defendants' failure to comply with federal standards and requirements, Plaintiffs suffered severe and permanent injuries. Plaintiff incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise economically injured.

118.    As a direct, legal, proximate and producing result of Defendants' conduct, Plaintiff suffered severe and permanent injuries.  Plaintiff endured substantial conscious pain and suffering, both physical and emotional in nature.  Plaintiff incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise physical, emotionally, and economically injured. Plaintiffs seek actual and punitive damages from the Defendants as alleged herein.  As a further direct and proximate legal result of the defective condition of the drugs Pondimin and thus "fen-phen", as well as the conduct of the Defendants, Plaintiff Lindsey Neighbors

has suffered loss of consortium and services of his spouse. The injuries and damages alleged herein are permanent and will continue into the future.

119. WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**FIFTH CAUSE OF ACTION**

**DECEIT BY CONCEALMENT**

**(Against All Defendants)**

120. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

121. The Defendants had actual knowledge based upon studies, published reports, clinical experience, and by other means, that the prescription drugs "fen-phen", Pondimin, Redux created unreasonable risks of serious bodily injury and death, or should have known such information.

122. The Defendants intentionally omitted, concealed and suppressed this information from the product labeling, promoting, marketing and advertising of Pondimin and thus "fen-phen" and instead labeled, promoted, marketed and advertised the prescription drugs Pondimin as safe in order to avoid losses and sustain profits in their sales to consumers, as Defendants knew that Plaintiff's healthcare providers would not have exposed Plaintiff to Pondimin and/or "fen-phen" had Plaintiff's healthcare providers known or otherwise been aware of the true facts concerning the significantly increased risk of developing PPH associated with the ingestion of Pondimin and "fen-phen".

123. Plaintiffs and Plaintiffs' healthcare providers reasonably relied, to their detriment, upon the Defendants' fraudulent actions and omissions in their representations concerning the risks of Pondimin and/or "fen-phen" in the labeling, advertising, marketing and promoting of said products.

124. Plaintiff and Plaintiff's healthcare providers reasonably relied upon the Defendants' representations to them that Pondimin and thus "fen-phen" were safe for human consumption and/or use and that the Defendants' labeling, advertising, marketing and promotions fully described all known risks of Pondimin and/or Redux.

125. The Defendants' actions, concealment and omissions as described herein demonstrate

- 24 -

1    a flagrant disregard for human life, so as to warrant the imposition of punitive damages.

2        126.    As a direct and proximate result of the Defendants' deceit by concealment, the

3    defective and inappropriate warnings, the unreasonably dangerous and defective characteristics of

4    Pondimin and thus "fen-phen", and the Defendants' failure to comply with federal standards and

5    requirements, Plaintiffs suffered severe and permanent injuries.  Plaintiffs incurred significant

6    expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise

7    economically injured.

8        127.    As a direct, legal, proximate and producing result of Defendants' conduct, Plaintiff

9    suffered severe and permanent injuries.  Plaintiff endured substantial conscious pain and suffering,

10   both physical and emotional in nature.  Plaintiff incurred significant expenses for medical care and

11   treatment, suffered lost wages and earnings, and was otherwise physical, emotionally, and

12   economically injured. Plaintiffs seek actual and punitive damages from the Defendants as alleged

13   herein.  As a further direct and proximate legal result of the defective condition of the drugs

14   Pondimin and thus "fen-phen", as well as the conduct of the Defendants, Plaintiff Lindsey Neighbors

15   has suffered loss of consortium and services of his spouse.  The injuries and damages alleged herein

16   are permanent and will continue into the future.

17       128.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory,

18   treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other

19   relief as the Court deems proper.

20                    **SIXTH CAUSE OF ACTION**

21          **NEGLIGENT MISREPRESENTATION AND CONCEALMENT**

22                      **(Against All Defendants)**

23       129.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every

24   allegation set forth in the preceding paragraphs and further alleges as follows:

25       130.    The Defendants labeled, promoted, marketed and advertised Pondimin and thus "fen-

26   phen" as safe and effective for use in humans for weight loss.

27       131.    The Defendants made the foregoing representations without any reasonable ground for

28   believing them to be true.  In supplying the false information, Defendants failed to exercise

1    reasonable care in labeling, promoting, marketing and advertising the prescription drugs "fen-phen"

2    Pondimin and Redux.

3         132.    The representations made by Defendants were, in fact, false in that Pondimin and/or

4    "fen-phen" and/or Redux were not safe and effective for weight loss in humans.

5         133.    Plaintiff's healthcare providers and prescribing physicians would not have exposed

6    Plaintiffs to Pondimin and thus "fen-phen" had Plaintiff's healthcare providers known or otherwise

7    been aware of the true facts concerning the prescription drugs Pondimin and/or "fen-phen" and/or

8    Redux.

9         134.    Plaintiff and Plaintiff's healthcare providers reasonably relied, to their detriment, upon

10   the Defendants' actions, concealment and omissions in their representations concerning the known

11   risks of Pondimin and/or Redux in the labeling, advertising, and promoting of said products, as set

12   forth above.

13        135.    Plaintiff and Plaintiff's healthcare providers reasonably relied upon the Defendants'

14   representations to them that Pondimin and thus "fen-phen' were safe for human consumption and/or

15   use and that the Defendants' labeling, advertising, and promotions fully and accurately described all

16   known risks of Pondimin, "fen-phen" and Redux.

17        136.    As a direct and proximate result of the Defendants' misrepresentations and

18   concealment, the defective and inappropriate warnings, the unreasonably dangerous and defective

19   characteristics of Pondimin and/or Redux, and the Defendants' failure to comply with federal

20   standards and requirements, Plaintiff suffered severe and permanent injuries.  Plaintiff incurred

21   significant expenses for medical care and treatment, suffered lost wages and earnings, and was

22   otherwise economically injured.

23        137.    As a direct, legal, proximate and producing result of Defendants' conduct, Plaintiff

24   suffered severe and permanent injuries.  Plaintiff endured substantial conscious pain and suffering,

25   both physical and emotional in nature.  Plaintiff incurred significant expenses for medical care and

26   treatment, suffered lost wages and earnings, and was otherwise physical, emotionally, and

27   economically injured.  Plaintiff seek actual and punitive damages from the Defendants as alleged

28   herein.  As a further direct and proximate legal result of the defective condition of the drugs

1   Pondimin and thus "fen-phen", as well as the conduct of the Defendants, Plaintiff Lindsey Neighbors

2   has suffered loss of consortium and services of his spouse.  The injuries and damages alleged herein

3   are permanent and will continue into the future.

4       138.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory,

5   treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other

6   relief as the Court deems proper.

7                            **SEVENTH CAUSE OF ACTION**

8                                      **FRAUD**

9                              **(Against All Defendants)**

10      139.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every

11  allegation set forth in the preceding paragraphs and further alleges as follows:

12      140.    At all times material hereto, the Defendants knew or should have known that the

13  administration of Pondimin and/or Redux and/or "fen-phen" could result in the development of

14  primary arterial hypertension and death when administered to patients in the manner they were

15  administered to Plaintiff.

16      141.    At all times material hereto, Defendants attempted to misrepresent and did

17  misrepresent facts concerning the safety of Pondimin and thus "fen-phen" as set forth above.

18      142.    Defendants' misrepresentations included knowingly withholding material information

19  from the medical community and the public, including Plaintiffs herein and their prescribing

20  physicians, and the FDA, concerning the safety of Pondimin, "fen-phen" and Redux.

21      143.    At all times material hereto, Defendants knew and recklessly disregarded the fact that

22  Pondimin and/or Redux could result in the development of PH and PPH and death when prescribed to

23  patients as it was prescribed to Kimberly Neighbors.  Notwithstanding the foregoing, the Defendants

24  continued to aggressively market Pondimin and/or Redux to consumers, including Plaintiff herein,

25  without disclosing the fact that administration of Pondimin and/or Redux could result in the

26  development of primary arterial hypertension and death when administered to patients in the manner

27  they were administered to Plaintiff.

28      144.    Defendants, and each of them, knew of the defective and unreasonably dangerous

                                       - 27 -
                COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

nature of the prescription drugs Pondimin and/or Redux as set forth herein, but continued to design, develop, manufacture, market, distribute, and sell them so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiffs herein, in conscious and/or negligent disregard of the foreseeable risk of the development of primary arterial hypertension and the risk of death.

145.    As set forth above, Defendants intentionally concealed and/or recklessly failed to disclose to physicians, the FDA, and the public, including Plaintiffs herein, the potentially life threatening side effects of the administration of Pondimin and/or Redux in order to ensure continued and increased sales.

146.    Defendants' intentional and/or reckless failure to disclose information deprived Plaintiff of necessary information to enable Plaintiff and Plaintiff's healthcare providers to weigh the true risks of using Pondimin and thus "fen-phen" against the benefits.

147.    As a direct consequence of Defendants' conscious and deliberate disregard for the rights and safety of consumers such as the Plaintiff, and the unreasonably dangerous and defective characteristics of Pondimin and/or Redux, Defendants' failure to comply with federal standards and requirements, Plaintiff suffered severe and permanent injuries, including but not limited to the development of primary arterial hypertension and cardiac and pulmonary disorders.  Plaintiff incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise economically injured. Plaintiff suffered severe pecuniary loss. Plaintiffs seek actual and punitive damages from Defendants as alleged herein.

148.    Defendants acted with knowing, conscious, and deliberate disregard for the rights and safety of consumers, including Plaintiffs herein such that the Defendants acted with oppression, fraud, and/or malice, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish Defendants and deter them from similar conduct in the future.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray for judgment against each of the Defendants as follows:

1.    For past and future general damages, according to proof;

2.    For past and future medical and other expenses, according to proof;

- 28 -

3.    For past and future loss of income and earnings capacity, according to proof;

4.    For punitive and exemplary damages in an amount to be determined at trial;

5.    For prejudgment interest on all damages as is allowed by the law;

6.    For past and future mental and emotional distress, according to proof;

7.    For past and future loss of consortium, according to proof;

8.    For past and future costs of suit incurred herein;

10.   For such other and further relief as the Court deems proper.

Respectfully submitted,

DATED:   February 19, 2015          GIANNI ✦ PETOYAN

By____/s/ Laura Gianni_____
        Laura Gianni
        Attorneys for Plaintiffs NEIGHBORS

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all claims.


Respectfully submitted,

DATED:   February 19, 2015                GIANNI ✦ PETOYAN


By _/s/ Laura Gianni_____
   Laura Gianni
   Attorneys for Plaintiffs NEIGHBORS

- 30 -